Moncrief, J.,
(after stating the facts.) The contract itself seems plain enough; it provides clearly for the sale of a certain quantity and description of lead then on board a particular ship, on its way to New York from Newcastle; an ambiguity arises in consequence of the extrinsic facts that no such “brand” marked lead was known in the lead market of this country, or in England, and no such firm existed in England as “ Walker, Parker & Walker.”
The Court of last resort have held that testimony having been given, tending to establish those extrinsic facts, the question should have been submitted to the Jury, to determine what was the “ common intention of the parties,” at the time of the making of the contract; and, as I understand the opinion of that Court, furnished by the counsel for the respondents, they held also, upon substantially the same testimony as now produced, that the contract clearly called for “soft English lead of the manufacture of Walkers, “Parker, Walker & Co.” (2 Bing., N. C., 665, 671.) It would seem to be quite clear that both parties could not have met upon the understanding or intent, the one to deliver and the other to receive an article with a specific brand or mark, of which brand or mark neither of the parties had ever heard, and which, in point of fact, did not exist; and that the contract should be held to mean “soft English lead,” then on board the ship Providence from Newcastle, of the manufacture of the well known lead manufacturers, Walkers, Parker, Walker & Co., with such mark, stamp or brand upon it as they usually put upon their lead sent to this market; otherwise the contract could be satisfied with lead with such brand mark upon it, though *58 not of tfie manufacture of a firm of “Walker, Parker & Walker.” It was held in Loomis v. Jackson, (19 Johns., 449,) that the words “lot Ho. 51 ” might be rejected as surplusage, the description being sufficient without those words, it not appearing that the grantor ever owned any land in lot Ho. 51, and as it did appear that he did own a parcel of land known as lot Ho. 50; and the Oourt cite Oro. 0., 548, a case in which the deed was of seventy-eight acres of land, lately in the occupation of B, and it happened that the same never was in the occupation of B, and it was held that the land sufficiently passed; for, said the Judges, the addition of a falsity shall never hurt where there is any manner of certainty without it; (and see other cases there cited, and Wigram on Ext. Ev., 99.)
The question put to David Smith, one of the defendants, “What conversation passed on the subject of this sale, prior to the actual delivery of the sale note ? ” being objected to, was overruled and excluded; in my opinion, properly so. There was no dispute as to the fact that a contract had been entered into; it had been reduced to writing. Heither the declarations nor the conduct of the parties, were important or admissible with a view to the construction to be given to the words of their agree- . ment. To have allowed the question, clearly might have led to the contradiction or variance of the plain terms of the agreement, or tended to control its legal operation; and this is not permissible. (2 Seld., 64; 5 Hill, 437.) The contract being made obscure or ambiguous by extrinsic facts, “ the usage of trade and the circumstances surrounding the transaction in question,” furnished the evidence touching the subject, to which the contract related, and interpreted or removed the doubt as to the meaning of the words “Walker, Parker &c Walker brand.” The evidence' admissible in such a case is, to ascertain the nature of a contract in the absence of clear and unambiguous words or stipulations, and is not to contradict or vary it in the slightest degree. It is, to discover upon what common intention the minds of the parties met, so *59 as to be enabled to say what contract was made between them. The conversation had by or with the defendant, Smith, tending to show his intent, was not admissible.
The other exceptions in the case, are either embraced by the opinion delivered in the Court of Appeals, or are untenable, except the one relating to an excess of the verdict over and above what the law allows. The statute has prescribed what shall constitute a ton. The contract in question was made, and to be performed within the.city of Yew York. A complainant under such a contract, would be precluded from showing that the parties intended to contract for the delivery of lead at the weight of 2,240 pounds to the ton. (Many v. The Beekman Iron Co., 9 Paige, 188.)
The point does not seem to me to have been taken upon the trial; and, it is said, is first presented upon the hearing of this appeal; it would appear from the concluding part of the charge of the learned Judge, that the counsel for the respective parties upon the trial must have conceded the correctness of the statement of the plaintiffs’ claim. It is plain that the Court so understood and treated it, in submitting- the ease to the Jury. A manifest error, however, having been made in preparing such statement of claim, being based upon 2,240 pounds, when it should be upon 2,000 pounds to the ton, the difference should be .deducted from the verdict. Upon the plaintiffs (the respondents) remitting such difference from the amount of the judgment, .the judgment and order denying the motion for a new trial should be affirmed, (Many v. Beekman Iron Co., 9 Paige, 188; Code of Pro., § 330;) otherwise a new trial should be ordered, and the. judgment be reversed with costs to abide the event.
Judgment and order affirmed.